NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

|  |  |  |
|---|---|---|
| ABDUL GRIGGS, | : | |
| | : | Civ. No. 19-246 (CCC) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| BRUCE DAVIS, THE ATTORNEY | : | |
| GENERAL OF THE STATE OF NEW | : | |
| JERSEY, | : | |
| | : | |
| Respondents. | : | |

_____

**CECCHI, District Judge**

## I.    INTRODUCTION

_Pro se_ petitioner Abdul Griggs, a state prisoner currently incarcerated at New Jersey State Prison in Trenton, New Jersey, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No 1. For the reasons below, the petition is denied.

## II.    BACKGROUND

### A.  Factual Background

Grigg's conviction arises out of his conviction for the murder of John Zephirin, who was shot twice in the back at close range. The facts are set forth in greater detail in the opinion of the Superior Court of New Jersey, Appellate Division, on Griggs's direct appeal of his conviction:[1]

_____

[1] Pursuant to 28 U.S.C. § 2254(e)(1), this Court affords deference to the factual determinations of the State court. _Id._ ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

At approximately 11:00 a.m. on August 3, 2006, T.J. was walking past apartment buildings on Irvington Avenue in Elizabeth when she saw defendant, who was wearing a white T-shirt, and Zephirin conversing in a walkway between two buildings. She saw no one else with the two men. As T.J. continued walking, she heard gunshots, turned around, saw Zephirin lying in the walkway, and saw defendant running toward the street. She saw no one else near the walkway. She ran to Zephirin and used his cellphone to call an ambulance. The ambulance took the unconscious Zephirin to the hospital, where he died five days later without regaining consciousness.

C.H. was across the street from the walkway. Prior to the shooting, she saw Zephirin exit a building and say to an unknown man, "Good morning, sir. How are you doing? Did you walk your dog today?" The man, who was smaller than defendant in size and light-skinned, then went into a store. C.H. saw defendant approach and speak to Zephirin in the walkway, but paid no attention to them. She then heard gunshots, saw Zephirin fall to the ground in the walkway, and saw defendant run across the street, enter a parked silver car, and drive away. C.H. saw no one else in the walkway.

Detective Gunther Graham of the City of Elizabeth Police Department heard a police transmission about the shooting. As he drove toward the crime scene, he saw a tall, thin African-American male wearing a white T-shirt "running full speed" in the opposite direction of the crime scene. The male, later identified as defendant, was "really agitated" and "really hyped up." The detective saw defendant turn around and yell something to a heavier set African-American male who was approximately fifty yards behind defendant. The heavier male turned and walked away from defendant. Graham lost sight of this man, but saw defendant run into a doorway. Graham radioed police headquarters and reported what he saw. Police units responded and searched the area. After approximately thirty minutes, Graham saw defendant exit a doorway and enter a blue station wagon. The police stopped the vehicle, searched defendant, but found no weapon in his possession. Defendant was arrested and charged with Zephirin's murder.

ECF No. 11-14 at 5–7.

## B.  Procedural History

After a first trial ended in a mistrial, a second jury convicted Griggs of first-degree murder and weapons offenses. ECF No. 11-4 at 2. The trial judge sentenced Griggs to life imprisonment with an 85% period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2, a concurrent 5-year term of imprisonment with three years of parole ineligibility, and a consecutive 10-year term of imprisonment with five years of parole ineligibility. ECF No. 11-4 at

2. The Superior Court of New Jersey, Appellate Division, affirmed, ECF 11-4 (*State v. Griggs*, No. A-3814-10 (App. Div. July 17, 2014)), and his petition for certification was denied. ECF 11-7 (*State v. Griggs*, 104 A.3d 1077 (N.J. 2015)).

Griggs petitioned for post-conviction relief ("PCR"), which the PCR judge, who was also the trial judge, denied without an evidentiary hearing. ECF Nos. 11-8 and 11-10 (*State v. Griggs*, Ind. Nos. 07-01-00015 & 07-01-00016 (N.J. Sup. Ct. Aug. 4, 2016)). The Appellate Division affirmed, ECF No. 11-15 (*State v. Griggs*, No. A-0310-16T3 (App. Div. March 8, 2018)), and certification was denied. ECF No. 11-18 (*State v. Griggs*, 194 A.3d 85 (N.J. 2018)).

Griggs filed the current habeas petition in January 2019. ECF No. 1. He argues that his state criminal proceedings violated his constitutional right to a fair trial because: (1) he was precluded from presenting evidence of third-party guilt (Ground One); (2) the State failed to independently corroborate his confession and therefore the trial judge should have *sua sponte* dismissed the charges at the end of the State's case or, in the alternative, instructed the jury on the need for corroboration (Ground Two); (3) excerpts from Griggs's letters should not have been admitted because they were not authenticated and were more prejudicial than probative (Ground Three); (4) the State elicited testimony based on an autopsy report of a non-testifying pathologist (Ground Four); (5) the prosecutor committed misconduct during his summation (Ground Six); and (6) witnesses referred to Griggs's prior trial and the court allowed a witness who was not an expert to identify phone records (Ground Seven). Griggs also argues that: (1) his sentence is manifestly excessive (Ground Five); (2) his counsel was ineffective for failing to (a) investigate and prepare the case and explain his trial strategy, (b) file appropriate motions and object to prejudicial evidence, (c) object to prejudicial testimony from the testifying pathologist, and (d) communicate his desire for a negotiated plea following the first trial (Ground Eight); and (3) he was denied due

process on his ineffective assistance claims because he was not given an evidentiary hearing on his PCR petition (Ground Nine). ECF 1 at 7–28.

The State answered Griggs's petition in June 2019, arguing, *inter alia*, that certain ineffective assistance claims—specifically, Grounds 8(a)–(c) in the petition—were unexhausted. ECF No. 11. Griggs then moved for a stay to exhaust those grounds, ECF No. 12, which the Court denied because he did not establish good cause for his failure to exhaust. ECF 15 at 3–4. Griggs withdrew his unexhausted claims, ECF Nos. 16–18, and in February and March 2022, he submitted two replies to the State's answer, ECF Nos. 19–20. The State replied on March 25, 2022. ECF No. 21. Griggs's habeas petition is now fully submitted and ready for decision. For the reasons set forth below, the petition is denied.

## III.   LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996, the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas petitioner must establish entitlement to relief for each claim in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *Parker v. Matthews*, 567 U.S. 37, 40–41 (2012). District courts must give great deference to the determinations of state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 773 (2010).

If the state courts have adjudicated a claim on the merits, the district court shall not grant a writ of habeas corpus unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

4

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). Federal law is "clearly established" for these purposes if it is clearly expressed in "the holdings, as opposed to the dicta" of the United States Supreme Court. *See Woods v. Donald*, 575 U.S. 312, 316 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id*. If a petitioner challenges an allegedly erroneous state court factual determination, that determination "shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Under these standards, the relevant state court decision for federal habeas corpus review is the last reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256, 289–90 (3d Cir. 2008). These standards apply "even where there has been a summary denial" by the state court. *Cullen v. Pinholster*, 563 U.S. 170, 187 (2011).

In addition to the above, a federal court may not grant a writ under Section 2254 unless the petitioner has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To do so, a petitioner must "fairly present all federal claims to the highest state court before bringing them in federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (quotation marks and citation omitted). When a petitioner's claims are unexhausted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005).

## IV.    DISCUSSION

### A.  Ground One

Griggs argues that the state courts precluded him from presenting evidence of third-party guilt, violating his right to a fair trial and due process. ECF No. 1 at 7–8. Griggs sought to introduce such evidence through: (1) the testimony of Zephirin's girlfriend, "who told the police that prior to the shooting, Zephirin had a dispute with another drug dealer over drug dealing territory," and (2) through C.H., "who allegedly told the police that the unknown man to whom Zephirin spoke said to Zephirin, 'What, are you following me?'" *State v. Griggs*, No. A-3814-10T2, 2014 WL 3510692, at *3 (N.J. Super. Ct. App. Div. July 17, 2014).

Relying on state law governing the admissibility of third-party guilt, the Appellate Division rejected this claim on direct appeal, finding that the trial court did not abuse its discretion in excluding the evidence:

> The court must provide criminal defendants the opportunity to present a complete defense including that someone else committed the crime charged. [*State v. Cotto*, 182 N.J. 316, 333 (2005)]. Such a defense includes the right to introduce evidence of third-party guilt if the proof offered has a rational tendency to engender a reasonable doubt with respect to an essential feature of the State's case. *Ibid.* This requires the defendant to offer evidence that "creates the possibility of reasonable doubt" by demonstrating some link between the third party and the victim. *Id.* at 333. Because this is a fact sensitive inquiry, the court has broad discretion to admit or preclude such evidence. *Ibid.*

> It is not enough to prove some hostile event and leave its connection to the crime charged to mere conjecture. [*State v. Sturdivant,* 31 N.J. 165, 179 (1959)]. "There must be some link between the evidence and the victim or the crime."[ *State v. Koedatich,* 112 N.J. 225, 301 (1988)]. "To be admissible, the third[-]party evidence need not show substantial proof of a probability that the third person committed the act; it need only be capable of raising a reasonable doubt of the defendant's guilt." *State v. Fulston*, 325 N.J. Super. 184, 191 (App. Div.1999), *cert. denied*, 163 N.J. 397 (2000).

> Here, no individual was specifically identified as the third party, and there was no link whatsoever between the proposed third-party guilt evidence and the shooting. The proffered evidence was nothing more than mere conjecture, and it would not assist the jury in reaching a just verdict. *Koedatich*, *supra*, 112 N.J. at 301. Because

there was no evidence of third-party guilt adduced at trial, the judge properly barred defense counsel from alluding to it in summation. *See State v. Bogen*, 13 N.J. 137, 140 (holding that while counsel had "the broadest latitude in summation," "comment must be restrained within the facts shown or reasonably suggested by the evidence"), *cert. denied*, 346 U.S. 825 (1953). Moreover the trial court has the obligation to dispel mistaken legal theories offered in summation. *State v. Whitaker*, 200 N.J. 444, 465 (2009). Accordingly, there was no error in the judge's preclusion of evidence of third-party guilt.

*Griggs*, 2014 WL 3510692, at *3.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("federal habeas corpus relief does not lie for errors of state law").

"The Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense, but . . . state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *Nevada v. Jackson*, 569 U.S. 505, 509 (2013) (cleaned up). "Such rules do not abridge an accused's right to present a defense so long as they are not arbitrary or disproportionate to the purposes they are designed to serve." *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (internal quotation marks omitted). The exclusion of evidence is "unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." *Id.* An accused "does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996) (citation omitted).

The Appellate Division reasonably rejected Griggs's claim on the basis that "no individual was specifically identified as the third party, and there was no link whatsoever between the proposed third-party guilt evidence and the shooting." *Griggs*, 2014 WL 3510692, at *3. Indeed,

when the trial judge asked Griggs's counsel, "What connection is there between the drug dealers and the shooting?" counsel responded only that there was "motive to do harm." ECF No. 11-24 at 125; *see also id.* 11-24 at 124 (In sustaining the State's objection to questioning about the alleged dispute with a drug dealer, the court stated: "The fact that Mr. Zephirin may have had a dispute with drug dealers . . . it may give motive to someone to do violence but we don't have a nexus to the scene or to the date or anything else.").

Further, in precluding counsel from questioning C.H. about the unknown man to whom Zephirin spoke, the trial court found no link between the man and Zephirin, stating: "[W]e don't know who that person is. He is unknown to anybody, and we are speculating as to what the victim felt about what was, allegedly, said to him in one instance, or said by him in another. We don't have any indication of what the reaction of the victim was. We don't know if the victim was upset." ECF No. 11-25 at 73. Absent a non-speculative connection between the third parties and the crime, the Appellate Division reasonably concluded that "[t]he proffered evidence was nothing more than mere conjecture, and it would not assist the jury in reaching a just verdict." *See United States v. Scheffer*, 523 U.S. 303, 309 (1998) ("State and Federal Governments unquestionably have a legitimate interest in ensuring that reliable evidence is presented to the trier of fact in a criminal trial. Indeed, the exclusion of unreliable evidence is a principal objective of many evidentiary rules.").

On this record, Griggs has not shown that the trial court's decisions were contrary to or an unreasonable application of clearly established federal law, nor has he shown that the decisions were based on an unreasonable determination of the facts in light of the evidence at trial. Accordingly, he is not entitled to federal habeas relief on Ground One.

### B.  Ground Two

Griggs argues that the trial court should have entered a judgment of acquittal at the end of the State's case because the State failed to corroborate Griggs's confession. ECF 1 at 9. In the alternative, Griggs argues that the trial court should have instructed the jury on the need for such corroboration. *Id.* at 9–10. The Appellate Division found Griggs's arguments meritless. The court set forth the evidence corroborating Griggs's confession as follows:

> A few days before the shooting, defendant called his ex-girlfriend, L.P., and told her to "[j]ust stay downtown" because "he did [not] want [her] around when he do somebody dirty," meaning Zephirin. After his arrest, defendant admitted to L.P. that he shot Zephirin.

> Shortly after the shooting, defendant admitted to his girlfriend, F.J., that he just shot someone. After his arrest, defendant called F.J., asked her to find the car he drove the day of the shooting, and told her there was a gun in the car. Defendant also asked F.J. to call his friend, Twan, and tell Twan where the car was located and to get the gun. F.J. found the car the next day and called Twan and told him the gun was in the car.

*Griggs*, 2014 WL 3510692, at *4.

The Appellate Division, reviewing Griggs's argument under a plain error standard, concluded that the record contained sufficient evidence to corroborate Griggs's admissions to his girlfriends:

> Defendant separately admitted to them that he shot Zephirin, but these admissions were merely a portion of the overwhelming evidence establishing defendant's guilt for first-degree murder. There was the testimony of two eyewitnesses, T.J. and C.H., as well as F.J.'s testimony that pursuant to defendant's instructions, she found the car he was driving the day of the shooting and contacted Twan to retrieve the gun.

*Griggs*, 2014 WL 3510692, at *4 (citations omitted). The Appellate Division also found no plain error in the trial judge's failure to *sua sponte* give a corroboration instruction:

> Where a judge instructs the jury of its duty to assess credibility, and defense counsel presents arguments challenging the truthfulness of an admission or confession, there is no plain error.

9

Here, defense counsel stated during summation that there was no physical evidence that defendant placed phone calls to L.P. and F.J., and thus, he did not make any admission to them. Counsel also discussed the concept of credibility, as did the judge during the final charge. As in [*State v. Reddish*], here "the failure of the court to instruct the jury specifically on its duty with respect to corroboration does not rise to the level of plain error." [181 N.J. 553, 622 (2004)].

*Griggs*, 2014 WL 3510692, at *4–5 (quotations and citations omitted).

In reviewing claims that trial evidence was insufficient for a conviction, habeas courts ask whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard gives due regard to the factfinder's ability to view the evidence, resolve conflicts in it, and draw reasonable inferences from it. *Id.* The relevant inquiry under *Jackson* is not "whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original).

Under both state and federal law, "an uncorroborated extrajudicial confession cannot [alone] provide the evidential basis to sustain a conviction." *State v. Lucas*, 152 A.2d 50, 57 (N.J. 1959); *see also Smith v. United States*, 348 U.S. 147, 157 (1954) ("an accused may not be convicted on his own uncorroborated confession."). "'[A]ll elements of the offense must be established by independent evidence or corroborated admissions.'" *State v. Di Frisco*, 571 A.2d 914, 925 (N.J. 1990) (quoting *Smith*, 348 U.S. at 156). In New Jersey, "[a]s long as the confession is corroborated by other evidence tending to strengthen it, . . . the criminal agency (as well as defendant's connection with the crime) may be proven by the confession itself." *State v. Abrams*, 607 A.2d 179, 185 (N.J. 1992) (internal quotation marks and citation omitted).

"Similarly, under federal law, the independent evidence does not, by itself, have to prove the charged offense. Rather, this corroborating evidence is meant to merely 'ensure the reliability

of the confession or admission of the accused.'" *Moon v. Johnson*, No. CV 17-3759, 2019 WL 2611123, at *17 (D.N.J. June 25, 2019) (citing *United States v. Brown*, 617 F.3d 857, 862 (6th Cir. 2010) (quoting *Smith*, 348 U.S. at 156)). "It is clear then, that under either the New Jersey rule or that established by the Supreme Court in *Smith*, the State need only provide corroborating evidence which would strengthen the reliability of the defendant's confession and establish that the crime in question did actually occur." *McDonald v. Warden*, Civ. No. 15-6231, 2016 WL 3556596, at *7 (D.N.J. June 28, 2016).

Here, the State presented strong evidence to corroborate Griggs's confession. It offered the testimony of two eyewitnesses, T.J. and C.H., and the testimony of F.J., who followed Griggs's instructions regarding the whereabouts of the car he drove the day of the shooting. Given this testimony, there was more than sufficient evidence presented at trial to corroborate Griggs's confession and strengthen its reliability. As the Appellate Division reasonably found, Griggs's admissions to his girlfriends were "merely a portion of the overwhelming evidence establishing defendant's guilt for first-degree murder." *Griggs*, 2014 WL 3510692, at *4. Accordingly, Griggs is not entitled to relief on this claim.

Griggs's alternative argument that the trial court should have instructed the jury on corroboration is not cognizable on habeas review. Generally, jury instructions are a matter of state law. *See Engle v. Isaac*, 456 U.S. 107, 120–21 n.21 (1982); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 309 (3d Cir. 1991). An improper jury instruction may only provide an adequate ground for habeas relief if it violates the petitioner's Fourteenth Amendment right to due process. *See Cupp v. Naughten*, 414 U.S. 141, 146 (1973). "The question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' not merely whether 'the instruction is undesirable, erroneous, or even universally

condemned.'" *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (quoting *Cupp*, 414 U.S. at 147). Importantly, it is "well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147).

If the alleged error is the omission of an instruction, a petitioner's burden is "especially heavy" because an omission is "less likely to be prejudicial than a misstatement of the law." *See id.* at 155. A petitioner thus must demonstrate that the omission was "inconsistent with the rudimentary demands of fair procedure," resulting in a miscarriage of justice. *Smith v. Arvonio*, No. 93-25, 1994 WL 327123, *3 (D.N.J. June 24, 1994) (quotation marks and citation omitted).

Griggs has not met his "especially heavy" burden. Considering the entire trial record, including the abundance of evidence corroborating Griggs's confession, Griggs did not establish that the omission of a corroboration charge resulted in a miscarriage of justice. Accordingly, Griggs has failed to show that the trial court erred by not providing a corroboration instruction, or that his conviction was a violation of due process. As Griggs has not demonstrated a wrong of constitutional dimension sufficient to warrant federal habeas relief, Ground Two will be dismissed.

## C.  Ground Three

Griggs argues that the trial court should not have admitted excerpts of jailhouse letters Griggs wrote to F.J., where the letters: (1) were not properly authenticated as required by N.J.R.E. 901 and (2) should have been precluded by N.J.R.E. 403.[2]  ECF No. 1 at 11. The Appellate Division rejected these arguments.

---

[2] New Jersey Rule of Evidence Rule 901 provides: "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must present evidence sufficient to support a finding that the item is what its proponent claims." New Jersey Rule of Evidence Rule 403 provides: "Except as otherwise provided by these rules or other law, relevant evidence may be excluded if its probative value is substantially outweighed by the risk of: (a) Undue prejudice,

The trial court conducted a hearing under N.J.R.E. 104[3] during Griggs's first trial, during which F.J. testified about six letters. *Griggs*, 2014 WL 3510692, at *5. F.J. testified that:

> she and defendant had a habit of writing letters to each other; the letters were
> addressed to her residence and bore defendant's name, address, and prison number
> on the envelope; she recognized defendant's handwriting and signature; defendant
> addressed her by her first name or her nickname; defendant sometimes referred to
> himself as her husband and her as his wife; and the letters referred to the gun and
> personal things, such as their children and sex life, their favorite song,
> conversations they had when she visited him in the jail, his gambling winnings, her
> job, a tattoo of defendant's name on her arm, and her prior relationships. In S–65,
> defendant instructed her to call Twan and ask if he got the gun from the car.

*Griggs*, 2014 WL 3510692, at *5. The trial judge "found F. J.'s testimony 'very credible,' reviewed the letters in detail, and determined they were sufficiently authenticated." *Id.* The judge supported his ruling with the following analysis:

> [W]hen one considers all of this evidence in total it does authenticate these
> documents. These are about general items, they are about specific items, they are
> about some private items, and as a whole it proves that these letters were written by
> the defendant to [F.J.] about the private conversations that they had and about
> specific information known to both of them. And even as to the general information,
> although that could be known by other people, when taken in context with the other
> more private information it certainly authenticates these documents through the
> context of the conversations and the information set forth therein.

*Griggs*, 2014 WL 3510692, at *5. The Appellate division found no abuse of discretion and no error in the trial judge's evidentiary ruling. *Id.* at *5–6.

"[T]he Due Process Clause guarantees the fundamental elements of fairness in a criminal trial." *Riggins v. Nevada*, 504 U.S. 127, 149 (1992). In the field of criminal law, "the category of infractions that violate 'fundamental fairness' [is defined] very narrowly based on the recognition

---

confusion of issues, or misleading the jury; or (b) Undue delay, waste of time, or needless presentation of cumulative evidence."

[3] New Jersey Rule of Evidence 104 provides: "The court shall decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege and Rule 403."

that, beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." *Medina v. California*, 505 U.S. 437, 443 (1992). To satisfy due process, Griggs's trial must have been fair, but it need not have been perfect. *United States v. Hasting*, 461 U.S. 499, 508–09 (1983) ("[T]here can be no such thing as an error-free, perfect trial, and [ ] the Constitution does not guarantee such a trial."). State-court evidentiary rulings cannot serve as a basis for habeas relief unless the asserted error rises to the level of a federal constitutional violation. *See Estelle*, 502 U.S. at 67–68.

Griggs contends that, because the letters were inadequately authenticated, the excerpts at issue were improperly admitted. ECF No. 1 at 11. Proper authentication, however, is a question of state law, and the Appellate Division found that the letters were sufficiently authenticated. *Griggs*, 2014 WL 3510692, at *6. The court noted that New Jersey law permits a writing's authenticity to be established by evidence sufficient to support a finding that the matter is what its proponent claims, and a judge's admission of a writing into evidence means only that there is sufficient evidence of authenticity to allow the jury to decide the issue. *Griggs*, 2014 WL 3510692, at *5 (citing N.J.R.E. 901; *State v. Mays*, 729 A.2d 1074 (N.J. Super. Ct. App. Div. 1999)). Further, "[l]etters containing information about the crime, as well as personal matters which only the defendant would have known, constitute a proper basis for concluding that the defendant wrote the letters." *Griggs*, 2014 WL 3510692, at *6 (citing *State v. Porambo*, 544 A.2d 870, 876 (N.J. Super. Ct. App. Div. 1988)).

Here, the Appellate Division found that "there was more than sufficient evidence supporting the judge's finding that [the] letters were properly authenticated," including F.J.'s credible testimony that "she received the letters directly from defendant, she recognized his handwriting and signature, and the letters contained specific personal information which only

defendant would have known." *Id.* at *6; *see also United States v. Reilly*, 33 F.3d 1396, 1407 (3d Cir. 1994) (a writing may be authenticated by its contents "if the letter is shown to contain information that persons other than the purported sender are not likely to possess") (internal quotations omitted); *Porambo*, 544 A.2d 870, 876 (letters were adequately authenticated where "the letters contained information about the crime as well as personal matters which only defendant or someone close to him would know"). On this record, the Appellate Division's rejection of Griggs's due process challenge to the admission of the letter excerpts was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Accordingly, federal habeas relief may not issue based on this portion of Ground Three.

The Appellate Division also rejected Griggs's claim that the letters were inadmissible under N.J.R.E. 403 as unduly prejudicial. *Griggs*, 2014 WL 3510692, at *5 n.3. The court found that Griggs offered no basis for excluding the letters; identified no undue prejudice; and failed to establish that any prejudice outweighed the probative value of the letters. *Id.*

Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." F.R.E. 403; *see also* N.J.R.E. 403. Griggs argues that the excerpts "were capable of both innocent and incriminatory interpretations depending on the mindset of the reader, so to permit the incriminatory inference only was unfair." ECF No. 1 at 13. Griggs asserts that because F.J. had ended her relationship with Griggs by the time of trial, her interpretation of the letters "was one indicative of defendant's guilt and probably motivated by anger at Griggs for his infidelities." *Id.*

As the state courts reasonably found, Griggs offered no basis for excluding the letters and identified no undue prejudice. That F.J. and Griggs's relationship was over at the time of trial was

15

a fact for the jury to consider in evaluating the credibility of F.J.'s testimony. This Court will not disturb the state court's evidentiary ruling on this issue. *See Estelle*, 502 U.S. at 67–68. The Appellate Division's rejection of Griggs's due process challenge to the state court's N.J.R.E. 403 ruling was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Accordingly, there is no basis for federal habeas relief.

### D.   Ground Four

Griggs argues that the trial court violated his right to confrontation when it "permitted the State to elicit testimony about stippling based upon an autopsy report by a non-testifying pathologist." ECF No. 1 at 14. The medical examiner who performed the autopsy on Zephirin, Dr. Leonard Zaretski, was no longer a county employee at the time of Griggs's trial. *Griggs*, 2014 WL 3510692, at *7. The deputy medical examiner, Dr. Junaid Shaikh, testified instead. *Id.* He opined that there was stippling around one of the gunshot wounds, indicating the shot was fired at close range. *Id.* Griggs challenged this opinion on cross-examination by referring to a notation in Dr. Zaretski's report that the markings around one of the entrance wounds "may" represent stippling. *Id.* This was the first reference to the contents of the autopsy report. *Id.*

The Appellate Division reviewed Griggs's argument for plain error because he did not object or raise the argument at trial. *Id.* at *7. The court conducted the following analysis in finding no error, "let alone plain error," in Dr. Shaikh's testimony:

> The judge held an N.J.R.E. 104 hearing on the admissibility of the stippling evidence, defendant did not object to Dr. Shaikh's testimony about stippling, and defendant was able to fully challenge the doctor's opinions on cross-examination. More importantly, if there was error, defendant invited it by introducing the contents of the autopsy report on cross-examination. "If a party has 'invited' the error, he [or she] is barred from raising an objection for the first time on appeal." *State v. A.R.,* 213 N.J. 542, 561 (2013).

*Griggs*, 2014 WL 3510692, at *7.

The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee a criminal defendant the right to confront "the witnesses against him." U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10. The right of confrontation is an essential attribute of a fair trial, requiring that a defendant have a "'fair opportunity to defend against the State's accusations.'" *State v. Garron*, 177 N.J. 147, 169 (2003) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973)). In *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004), the Supreme Court held that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *See also Davis v. Washington*, 547 U.S. 813, 821 (2006). "The Confrontation Clause is commonly implicated when a witness refers to specific information from a non-testifying third party." *Turner v. Warden*, No. CV 18-17384, 2022 WL 951309, at *8 (D.N.J. Mar. 30, 2022). The right to confrontation may, however, "be waived, including by failure to object to the offending evidence[.]" *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 314 n.3 (2009).

Here, defense counsel did not object to Dr. Shaikh's reference to Dr. Zaretski's autopsy report, and instead solicited information about the report in an effort to discredit Dr. Shaikh's conclusion regarding stippling. ECF No. 11-28 at 66, 68–70; *see also United States v. Magloire*, 235 F. App'x 847, 850 n.1 (3d Cir. 2007) (no Confrontation Clause violation "where defense counsel elicits hearsay statement"); *United States v. Parikh*, 858 F.2d 688, 695 (11th Cir. 1988) ("the admission of out of court statements by a government witness, when responding to an inquiry by defense counsel, creates 'invited error'"; "[t]he confrontation clause is not implicated where the defendant seeks to introduce hearsay declarations as part of his defense"); *Gibbs v. Woods*, No. 14-CV-14028, 2022 WL 1124191, at *7 (E.D. Mich. Apr. 14, 2022) ("Indeed, a defense attorney may reasonably decide that there is a strategic reason to withhold an objection to a patent

constitutional violation. For instance, it could be a reasonable strategy for a defense attorney to withhold an objection (under the Confrontation Clause) to the admission of a confession by a non-testifying co-defendant if aspects of the co-defendant's confession supported a defense that counsel was attempting to pursue."). Defense counsel also had a full opportunity to cross-examine Dr. Shaikh, who testified that he personally reviewed the underlying documents and photographs from the autopsy, evaluated them, and came to an independent conclusion about the presence of stippling. ECF No. 11-28 at 69–71.

On this record, the Appellate Division's rejection of Griggs's Sixth Amendment challenge to the stippling testimony was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Accordingly, federal habeas relief may not issue based on Ground Four.

### E.     Ground Five

Griggs argues that his sentence is excessive in violation of his constitutional right to due process and a fair trial because the three aggravating factors found by the trial court—N.J.S.A. 2C:44–1a(3) (the risk of re-offense), (6) (criminal history), and (9), (the need to deter)—"primarily focus on Griggs's past conduct, thereby emphasizing offender-based factors," and the trial court "afforded far too much weight to them." ECF No. 1 at 15; *Griggs*, 2014 WL 3510692, at *8. The Appellate Division rejected this argument, finding that the record contained "competent, credible evidence supporting the judge's findings of aggravating and mitigating factors." *Griggs*, 2014 WL 3510692, at *8. The court stated that "[t]he life sentence the judge imposed in this case met the sentencing guidelines," and further found that the sentence did not shock the court's judicial conscience. The court emphasized that Griggs "had numerous juvenile charges and was adjudicated delinquent of assault and robbery," and "[a]s an adult, he had six indictable

convictions, including convictions for robbery, aggravated assault, possession of a weapon for an unlawful purpose, and unlawful possession of a weapon." *Id.*

A federal court's ability to review state sentences is limited to challenges based on "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies." *See Grecco v. O'Lone*, 661 F. Supp. 408, 415 (D.N.J. 1987) (citation omitted). Thus, federal courts may not review a challenge to a state court's discretion at sentencing unless it violates a separate federal constitutional limitation. *See Pringle v. Court of Common Pleas*, 744 F.2d 297, 300 (3d Cir. 1984); *see also* 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 67. In *United States v. Burnett*, 773 F.3d 122, 136–37 (3d Cir. 2014), the Third Circuit reviewed the standard applicable to an Eighth Amendment excessive sentence challenge:

> The Supreme Court has explained that the "Eighth Amendment, which forbids cruel and unusual punishments, contains a narrow proportionality principle that applies to non-capital sentences." *Ewing v. California*, 538 U.S. 11, 20 (2003) (citations omitted). A court must consider three proportionality factors when evaluating Eighth Amendment challenges: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions. *Solem v. Helm*, 463 U.S. 277, 290–92 (1983). In conducting this analysis, a court grants substantial deference to legislative decisions regarding punishments for crimes. *United States v. Rosenberg*, 806 F.2d 1169, 1175 (3d Cir. 1986); *United States v. Miknevich*, 638 F.3d 178, 186 (3d Cir. 2011) ("Generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment . . . because we accord substantial deference to Congress, as it possesses broad authority to determine the types and limits of punishments for crimes.").
>
> The first factor acts as a gateway prong to the proportionality inquiry. The Eighth Amendment, after all, only forbids sentences that are "grossly disproportionate" for a conviction for the crime involved. If the defendant fails to demonstrate a gross imbalance between the crime and the sentence, a court's analysis of an Eighth Amendment challenge is at an end. Successful proportionality challenges in non-capital cases are "exceedingly rare." *Ewing*, 538 U.S. at 21 (quoting *Rummel v. Estelle*, 445 U.S. 263, 272 (1980)).

*Burnett*, 773 F.3d 122, 136–37 (3d Cir. 2014).

The trial judge found Griggs to be a "cunning," "dangerous," and "seasoned" criminal. *Id.* at 15, 18. "Less than eight months after maxing out on parole," Griggs "shot John Zephirin in the back and left him to die . . . ." ECF No. 11-32 at 15. The trial judge explained that the trial evidence demonstrated that Griggs was "adept at manipulating evidence and orchestrating events immediately after the shooting, such as avoiding the police, fleeing from the scene, jumping into a stranger's car to escape the scene, arranging for pickup at a remote location and arranging for the recovery of the weapon and/or car." *Id.* at 17–18.

The trial judge summarized Griggs's "long history of violent offenses" at Griggs's sentencing as follows:

> He has eight adjudications of delinquency . . . . He has had seven parole revocations as a juvenile, two escapes from juvenile custody . . . and two violations of probation.
>
> As an adult, he is here on his seventh and eight indictable convictions. These convictions include a robbery in 1992 for which he received 10 years in State Prison. He had his parole revoked in 1998 and he has an escape on that charge on June 22, 2005. He has an aggravated assault conviction from July 10, 2000 for which he received a five-year State Prison sentence.
>
> In 2000 he was guilty of a certain persons. He received a nine-year State Prison sentence. He is also listed as having escaped on that same date, June 22, 2005. He has convictions for possession of a weapon for unlawful purpose and resisting arrest. He was sentenced in 1999 to five years in State Prison. He has an escape on June 2, 2005 on that charge as well.
>
> He also has a certain persons sentenced on June 14, 1999 to five years. He also has an escape on that June 22 date.
>
> Finally, he has a bribery and conspiracy—both a bribery and conspiracy conviction from 2008. He received a six-year State Prison sentence which he is serving at the present time. . . .

ECF 11-32 at 15–17.

Finally, the judge applied the following aggravating factors and found that they substantially outweighed "the nonexistent mitigating factors":

> I do find that the escapes and the parole revocation indicate a risk to commit another offense and I do find aggravating factor 3. His enormous prior record warrants a very strong aggravating factor 6 and his long history of violent offenses and weapons offenses certainly presents a specific and general need to deter Mr. Griggs from committing other offenses.

*Id.* at 17.

The record demonstrates proportionality between Griggs's crime and sentence, and supports the trial judge's application of the aggravating factors. As Griggs has failed to establish an Eighth Amendment violation, the Appellate Division reasonably rejected Grigg's argument that the trial court over-emphasized the aggravating factors. *See Beckett v. Powell*, No. CV 19-14559, 2022 WL 884376, at *5 (D.N.J. Mar. 25, 2022) ("Petitioner's challenges to his sentencing 'for failure to properly weigh the aggravating and mitigating factors [are] not reviewable here.'") (quoting *Jenkins v. Bartkowski*, No. 10-4972, 2014 WL 2602177, at *21 (D.N.J. June 11, 2014)); *Hinton v. Att'y Gen. of State of N.J.*, No. CV 18-14508, 2020 WL 6482932, at *11–12 (D.N.J. Nov. 4, 2020) ("Petitioner fails to show that the denial of this claim was contrary to or an unreasonable application of clearly established federal law. His only argument is that his sentence is excessive because the state court improperly weighed the aggravating and mitigating factors. However, this in and of itself does not appear to state a constitutional claim.") (collecting cases). The Appellate Division's finding that "[t]he record contains competent, credible evidence supporting the [trial] judge's findings of aggravating and mitigating factors," therefore, was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. *Griggs*, 2014 WL 3510692, at *8. Accordingly, federal habeas relief may not issue based on Ground Five.

### F.   Ground Six

Griggs argues that he was deprived of a fair trial by statements the prosecutor made during opening statements and summation. ECF No. 1 at 16–17. In his opening, the prosecutor referred

to portions of letters, some of which were ultimately not admitted into evidence, wherein Griggs admitted to committing the crime, and in his closing the prosecutor referred to Griggs as a "murderer" and a "cold-blooded killer." *Griggs*, 2014 WL 3510692, at *6–8. The Appellate Division rejected Griggs's arguments. *Id.*

As to the reference to letters in which Griggs admitted committing the crime, the Appellate Division found there was no prosecutorial misconduct because the letters in question had been admitted at the first trial; Griggs "knew well in advance of the second trial that the prosecutor would use this critical document to prove he committed the murder"; Griggs did not move to bar admission of it prior to the second trial (Griggs did not object to its admission until the fourth day of trial); and thus, the statement was correct when made. *Id.* at *6–7. The Appellate Division further found that even if the comment were improper, Griggs was not prejudiced because: "There was other credible evidence that defendant admitted committing the crime. Both F.J. and L.P. testified that defendant told them he shot Zephirin. In addition, the judge specifically instructed that the jury could not consider items that were not in evidence, and could not consider as evidence remarks in counsel's openings and summations." *Id.* at *7.

As to the closing statements, the Appellate Division found that "the prosecutor's labeling of defendant as a 'cold-blooded killer' did not constitute reversible error because it was supported by the evidence." *Id.* at *8. The court explained: "The evidence in this case firmly established that defendant shot Zepherin twice in the back at close range for no apparent reason, thus providing a justifiable basis for the prosecutor's characterization of defendant as a 'murderer' and 'cold-blooded killer.'" *Id.*

When a prosecutor's opening or closing remarks are challenged in habeas, "[t]he relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the

resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quotation marks and citation omitted). "Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001).

Upon review of the prosecutor's entire summation and in light of the trial evidence, the Court finds the challenged comments were not so prejudicial as to deny Griggs due process. As to the reference to Griggs's letters in the opening statements, the Appellate Division's finding of no prejudice was not an unreasonable application of Supreme Court precedent. First, there was substantial evidence of Griggs's guilt, including, as the Appellate Division noted, both F.J. and L.P. testified that Griggs told them he shot Zephirin. Second, the trial judge instructed the jury not to consider items that were not in evidence and not to consider as evidence remarks in counsel's openings and summations, and the jury is presumed to have followed these instructions. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *see also United States v. Bailey-Snyder*, 923 F.3d 289, 296 (3d Cir. 2019) ("[T]he Court had instructed the jury before closing that lawyers' statements, including those made in closing, are not evidence. These facts leave us with little reason to believe that the Government's statements improperly influenced the jury at all, let alone substantially."); *United States v. Console*, 13 F.3d 641, 673 (3d Cir. 1993) ("We conclude that although the prosecutor's conduct may have been questionable at times, any misconduct was harmless in the context of the trial as a whole. This is particularly true due to the curative instructions given to the jury."). Therefore, Griggs's prosecutorial misconduct claim based on the prosecutor's opening comment does not merit habeas relief.

The prosecutor's comments during closing also provide no basis for habeas relief. Federal courts have consistently rejected arguments based on similar comments. *See Darden*, 477 U.S. at 183 (prosecutor's description of defendant as an "animal," labeling the crime as "the work of an animal," and argument that the defendant should not be let out of his cell without "a leash," did not render the defendant's trial fundamentally unfair); *United States v. Pungitore*, 910 F.2d 1084, 1127 (3d Cir. 1990) (finding no prosecutorial misconduct in the prosecutor's reference to the appellant as a "cold-blooded murderer" because this was a "fair comment on the evidence adduced at trial"); *Banks v. Workman*, 692 F.3d 1133, 1149 (10th Cir. 2012) (upholding state courts' rejection of prosecutorial misconduct claim where, during closing argument, the prosecutor characterized the defendant as a "wild animal that stalks its prey," a "predator who lurks in the shadows," a "monster" who selects the most helpless victims, and a "Mafia style" killer); *Kappos v. Hanks*, 54 F.3d 365, 367–68 (7th Cir. 1995) (holding the prosecutor's comments during closing argument that the defendant was a murderer and artful liar, while questionable, "were essentially a commentary on the credibility issue" before the jury and did not rise to the level of a constitutional violation); *Blackston v. Rapelje*, 907 F. Supp. 2d 878, 901–02 (E.D. Mich. 2012) (finding that the prosecutor's comment during opening statement in murder prosecution that he did not mean to paint a witness "as anything other than a cold-blooded murderer" just like the petitioner, "because that's what they are," did not entitle petitioner to habeas relief on his prosecutorial misconduct claim), *aff'd*, 769 F.3d 411 (6th Cir. 2014), *opinion amended and superseded*, 780 F.3d 340 (6th Cir. 2015).

Accordingly, the Appellate Division's finding that these comments did not constitute reversible error was not contrary to or an unreasonable application of Supreme Court precedent. Griggs is not entitled to habeas relief on Ground Six.

24

### G.     Ground Seven

Griggs argues that he was deprived of a fair trial when the trial court: (a) failed to properly instruct the jury regarding improper testimony; and (b) allowed a witness to identify her phone records. ECF No. 1 at 18–19. The Appellate Division summarily rejected these arguments, finding them "without sufficient merit to warrant discussion in a written opinion." *Griggs*, 2014 WL 3510692, at *8.

"Habeas relief for a due process violation concerning an absent or defective instruction is available when the absence of an instruction, or a defective instruction, infects the entire trial with unfairness." *See Albrecht v. Horn*, 485 F.3d 103, 129 (3d Cir. 2007) (citation omitted). The petitioner must demonstrate that the failure to include the limiting instruction was prejudicial. *See Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). This burden is "even greater than the showing required to establish plain error on direct appeal." *Id.* Moreover, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id.* "[U]nless [the error] had [a] substantial and injurious effect or influence in determining the jury's verdict," it is deemed harmless. *See Adamson v. Cathel*, 633 F.3d 248, 259 (3d Cir. 2011) (quoting *Fry v. Pliler*, 551 U.S. 112, 116 (2007)).

Griggs's argument regarding the trial court's alleged failure to instruct the jury regarding improper testimony relates to references to his first trial, specifically: (1) L.P.'s response to a question that, "these questions wasn't asked the last time I was here," and (2) defense counsel's reference while cross examining Dr. Shaikh to "the last trial or another proceeding." ECF No. 1 at 19. However, the trial court did instruct the jury in response to these comments:

> [D]on't consider what those proceedings may have been. Don't consider the reason why we are here after all these prior proceedings. Consider this here and you can consider, if you want, for the purpose it was admitted any testimony from a prior

> proceeding. Okay? Don't start speculating as to what we are doing here if we had
> a prior proceeding.

ECF 11-10 at 14.

In light of: (1) the court's instruction not to speculate about or consider the type or purpose of prior proceedings; (2) the presumption that the jury will follow instructions; and (3) a review of the challenged comments and instruction in context, Griggs has failed to establish that the alleged improper testimony and instruction infected the trial with unfairness. As noted throughout, there was strong evidence that Griggs is guilty of the charged crimes. *See Albrecht v. Horn*, 485 F.3d 103, 129 (3d Cir. 2007) (whether a constitutional violation has occurred will depend, in part, upon the overall evidence presented in the case); *Dirago v. Hendricks*, No. 03-5943, 2005 WL 3113429, at *15 (D.N.J. Nov. 17, 2005) (omitted instruction was harmless error, particularly where the Appellate Division determined that "there was overwhelming evidence against petitioner and the case was not 'a close one'"). On this record, the Appellate Division's rejection of Griggs's claim regarding the alleged need for an instruction regarding improper testimony is not contrary to or an unreasonable application of Supreme Court precedent and this part of Ground Seven does not provide a basis for habeas relief.

The Appellate Division also properly rejected Griggs's argument that the trial court erred by permitting F.J. to identify her phone records. State court evidentiary rulings are generally not cognizable in federal habeas review; however, a petitioner may nonetheless be entitled to relief if he can show that the use of the evidence caused a "fundamental unfairness" at trial in violation of his due process rights. *See Kontakis v. Beyer*, 19 F.3d 110, 120 (3d Cir. 1994) (citing *Lisenba v. California*, 314 U.S. 219, 236 (1941)). Griggs has not made such a showing.

First, the relevant rules of evidence governing opinion testimony of lay witnesses do not require F.J. to possess expert knowledge or skill to recognize and identify her phone number.[4] Second, the phone records were shown to F.J. to refresh her recollection as to the time she received a call from Griggs; they were not admitted into evidence. ECF No. 11-47 at 141; ECF No. 11-28 at 120–28; *see also U.S. v. Lnu*, 575 F.3d 298, 307 (3d Cir. 2009) ("witnesses may use any aid to refresh their recollections, including inadmissible evidence that might never be shown in open court") (cleaned up); *State v. Carter*, 449 A.2d 1280, 1299 (N.J. 1982) ("[o]nce a proper foundation has been laid, a witness may examine any document to refresh his memory").

Under these circumstances, Griggs has not established that the use of the challenged records caused a fundamental unfairness at trial in violation of his due process rights. Accordingly, the Appellate Division's rejection of Griggs's claim regarding the telephone records is not contrary to or an unreasonable application of Supreme Court precedent and this part of Ground Seven does not provide a basis for habeas relief.

### H.    Ground Eight

In Ground Eight, subpart (d),[5] Griggs argues that trial counsel was ineffective for not communicating his wishes for a negotiated plea—specifically, for a 15-year sentence—after his first trial ended in a mistrial. ECF No. 1 at 23; ECF No. 11-8 at 74; ECF No. 11-10 at 10. The Appellate Division rejected this argument, finding it to be "without sufficient merit to warrant

---

[4] *See* F.R.E. 701 ("If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702 [(governing expert witness testimony)]"); N.J.R.E. 701 ("If a witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences may be admitted if it: (a) is rationally based on the witnesses' perception and (b) will assist in understanding the witness' testimony or determining a fact in issue.").

[5] Ground Eight, subparts (a)–(c) have been withdrawn. ECF Nos. 16 and 18.

discussion in a written opinion." *State v. Griggs*, No. A-0310-16T3, 2018 WL 1191195, at *2 (N.J. Super. Ct. App. Div. Mar. 8, 2018). The court summarily affirmed the PCR court's finding that Griggs failed to make a prima facie showing of ineffectiveness of counsel "substantially for the reasons expressed by [the PCR judge] in his thorough written decision." *Id.*

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI; *see Strickland v. Washington*, 466 U.S. 668, 686 (1984). A claim of ineffective assistance has two necessary components. *Id.* at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness," *id.* at 687–88, meaning he "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. Second, a petitioner must establish prejudice, i.e., a reasonable probability that the result of trial would have been different absent the deficient act or omission. *Id.* at 687. To establish prejudice from ineffective assistance during the plea bargain process, a petitioner must demonstrate that, but for counsel's errors, the outcome of the process would have been different. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Further, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697)

On habeas review, it is not enough that a federal judge would have found counsel ineffective. The judge must find that the state court's resolution of the issue was unreasonable, a higher standard. *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

The PCR judge rejected Griggs's claim as follows:

This is not the situation where defense counsel failed to convey an offer from the State to the petitioner. Here, petitioner argues that trial counsel failed to convey his willingness to accept a specific plea offer to the State. As such, petitioner has failed to satisfy the second prong in *Strickland*. The State asserts that it had no intention at any point of ever offering anything less than a sentence of thirty years with thirty years of parole ineligibility. "[A] defendant has no legal entitlement to compel a

> plea offer or a plea bargain; the decision whether to engage in such bargaining rests
> with the prosecutor. *State v. Williams*, 277 N.J. Super 40, 46 (App. Div. 1994)
> (citations omitted). Assuming *arguendo* that trial counsel did not convey
> defendant's request to the State, it would have no effect on the outcome of this case
> since the State would not accept such a counter-offer; trial counsel could not force
> the State to do so.

ECF No. 11-10 at 11–12 (citations omitted).

Griggs asserts in conclusory fashion that after the first trial ended in a mistrial, he "was in a better position to obtain a better offer" than the State's original offer of a "30 year term with a 30 year stip." ECF No. 1 at 23; ECF No. 11-12 at 43 (pretrial memorandum with plea agreement offer of "30 yrs NJJP w/ 30 Stip"). However, he makes no showing that the State was willing to accept anything other than the 30-year offer previously extended. Therefore, as the PCR court found, even assuming defense counsel failed to convey Griggs's wish for a 15-year offer, Griggs has not demonstrated that the outcome of the proceeding would have been different. *See*, *e.g.*, *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001) ("Petitioner claims that counsel refused to convey any of his counter-offers . . . . However, there is absolutely nothing in the record to suggest that counsel refused to convey any such counter-offers, that the state would have accepted any such counter-offers, and that petitioner would have been steadfast in his desire to plead guilty. Bald assertions are not enough to sustain a claim of ineffective assistance of counsel."); *Bitter v. Premo*, No. 15-00396, 2016 WL 554584, at *5 (D. Or. Feb. 10, 2016) (no ineffective assistance where petitioner did not submit "independent evidence demonstrating that the prosecutor would have agreed to" counteroffer); *Carrillo v. United States*, No. 09-00249, 2014 WL 12721414, at *9 (W.D. Tex. Nov. 6, 2014), *adopted by* 2014 WL 12721416 (W.D. Tex. Nov. 25, 2014) (no ineffective assistance where claim is "wholly speculative and conclusory" and there are "no facts to support the existence or the terms of a more favorable plea offer that would have been offered by the Government but for [defense counsel's] failure to further negotiate"); *Castillo v. Long*, No.

12-04318, 2013 WL 1182943, at *13 (C.D. Cal. Jan. 9, 2013), *adopted by* No. 12-04318, 2013 WL 1182951 (C.D. Cal. Mar. 21, 2013) ("The Court finds that it was not objectively unreasonable for the California Court of Appeal to conclude that petitioner had not made the requisite showing of *Strickland* prejudice with respect to his ineffective assistance claim premised on counsel's alleged failure to convey a counteroffer of five years" because "petitioner failed to demonstrate a reasonable probability that the prosecutor would have accepted a five-year counteroffer."); *cf. Schnebelen v. Beaver*, No. 18-00281, 2020 WL 2892219, at *10 (W.D.N.C. June 2, 2020), *reconsideration denied* No. 18-00281, 2020 WL 3259801 (W.D.N.C. June 16, 2020) ("The Supreme Court has never held that counsel has a duty to communicate a defendant's formal plea counter offer to the prosecution . . . . As such, the state post-conviction court's rejection of Petitioner's claim that [defense counsel] violated his Sixth Amendment right to the effective assistance of counsel by failing to communicate a counter offer to the prosecutor could not have been contrary to clearly established federal law as decided by the U.S. Supreme Court.").

Accordingly, Griggs has not established that the state court's rejection of Griggs's ineffective assistance claim is contrary to or an unreasonable application of clearly established federal law, and he is not entitled to habeas relief on this claim.

## I.   Ground Nine

Griggs contends that he was denied due process when the PCR court denied his petition without conducting an evidentiary hearing on his ineffective assistance claims. ECF No. 24–28. Whether the PCR court should have conducted a hearing is not a claim that is cognizable on habeas review: "[T]he federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's *collateral* proceeding does not enter into the habeas calculation."

*Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998) (emphasis in original); *see also, e.g.*, *Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004) ("habeas proceedings are not the appropriate forum for Lambert to pursue claims of error at the PCRA proceeding").  Accordingly, this argument provides no basis for habeas relief.

## V.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Here, reasonable jurists would not find the Court's habeas ruling debatable. Accordingly, no certificate of appealability shall issue.

## VI.    CONCLUSION

For the foregoing reasons, Griggs's petition is denied with prejudice on the merits and no certificate of appealability shall issue.  An appropriate order follows.


DATED:  February 27, 2023

_____s/ Claire C. Cecchi_____
**CLAIRE C. CECCHI, U.S.D.J.**

31